**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW BONNSTETTER, | |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| S2Q SYSTEMS, LLC, and BENJAMIN DERIN, individually, | |
| Defendants. | |

**COMPLAINT AT LAW**

Plaintiff, Matthew Bonnstetter (hereinafter "Plaintiff" or "Mr. Bonnstetter"), by and through his attorneys, Caffarelli & Associates Ltd., for his Complaint at Law against Defendants S2Q Systems, LLC, (hereinafter "S2Q" or the "Company") and Benjamin Derin ("Derin"), individually (collectively "Defendants") states as follows:

**NATURE OF ACTION**

1.      Plaintiff brings this action alleging violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"), and for common law claims of fraudulent misrepresentation, breach of contract, promissory estoppel, and unjust enrichment.

**JURISDICTION AND VENUE**

2.      Plaintiff brings his Complaint in this Court based upon federal diversity jurisdiction under 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

3.      Plaintiff's employment during the relevant time period was physically located in the Eastern Division of the Northern District of Illinois, and most if not all acts and omissions giving rise to the material facts took place in the same location. Accordingly, venue in the Eastern Division of U.S. District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

4.      Plaintiff is and at all relevant times was a resident of DuPage County, Illinois.

5.      Defendant S2Q is a Limited Liability Corporation registered in the state of Ohio, and with its principal place of business in Ohio.

6.      Defendant Derin is, and at all relevant times was, a resident of Ohio, the President and a shareholder of S2Q.

7.      Defendant S2Q Systems ("S2Q") is an online quoting platform that offers rate management and procurement solutions for freight quoting, RFP management, and carrier rate collection.

8.      S2Q employed Mr. Bonnstetter from August 23, 2023 through May 15, 2024.

**FACTUAL ALLEGATIONS**

9.      In July 2023, Mr. Bonnstetter was working as the Director of Business Development at GP Transco. At that time, Mr. Bonnstetter had earned a reputation for building highly effective requests for proposal ("RFP") processes using proprietary Excel-based systems.

10.      In or around July 2023, Derin became acquainted with Mr. Bonnstetter and expressed interest in leveraging Mr. Bonnstetter's methods to create a RFP product that his company, S2Q, could commercialize.

11.      On or around August 21, 2023, Mr. Bonnstetter received a call from Alex Naragon, who inquired on Derin's behalf whether Mr. Bonnstetter would be interested in a position with S2Q.

12.      On August 23, 2023, Derin contacted Mr. Bonnstetter via LinkedIn, and on August 25, 2023, Derin offered Mr. Bonnstetter the Director of Strategy position at S2Q.

13.     One of Mr. Bonnstetter's chief responsibilities in that position would be to build S2Q a RFP process, which was uniquely developed by Mr. Bonnstetter. S2Q would then sell that RFP process to other companies. Mr. Bonnstetter was also responsible for creating the foundational strategic blueprint for the RFP, defining the product's quoting logic, margin-based calculations and RFP workflow, developing pricing strategy, and collaborating with internal stakeholders.

14.     Mr. Bonnstetter used his unique proprietary data and processes to build the RFP product.

15.     Mr. Bonnstetter also worked as part of the sales team, supporting client deals, developing the Company's cold call scripts, RFP sales cycle, and outreach strategies, mentoring sales team members, and generating qualified leads. He was provided with a document containing his sales commission rates, which Mr. Bonnstetter signed on August 31, 2023. See Ex. A.

16.     Mr. Bonnstetter negotiated with Derin in order to structure terms of his employment with Defendants that protected his proprietary interests in his RFP product. Mr. Bonnstetter did not want to build a highly lucrative product for S2Q to profit off of, only to be terminated once he completed the product.

17.     Mr. Bonnstetter requested, and Derin agreed, that Mr. Bonnstetter would own 3% of S2Q, which would increase to 4% ownership if S2Q's value exceed $20 Million.

18.     Mr. Bonnstetter and Derin also agreed that Mr. Bonnstetter would receive an exit bonus and a severance payment equivalent to two months of his base salary if S2Q was sold or if Mr. Bonnstetter was terminated.

19.     Derin assured Mr. Bonnstetter that he would be receiving a written employment contract memorializing these terms within ninety days of the start of his employment with S2Q ("Employment Agreement").

20.     However, Derin insisted that Mr. Bonnstetter first sign an interim employment contract with "standard" terms in the meantime in order to start working ("Interim Agreement"). See Ex. B.

21.     The Interim Agreement did not contain provisions for Mr. Bonnstetter's ownership rights, exit bonus, or eight weeks' severance that were a part of the Employment Agreement. The Interim Agreement only provided for two weeks' severance.

22.     Derin pressured Mr. Bonnstetter to videoconference with him and e-sign the Interim Agreement on the spot. Mr. Bonnstetter was not afforded an opportunity to review the Interim Agreement in detail or consult independent counsel regarding its terms.

23.     Mr. Bonnstetter began working for S2Q, diligently working on the RFP product he was hired to build, while waiting for Derin to provide him with his Employment Agreement.

24.     On September 21, 2023, Derin sent Mr. Bonnstetter a "Teams" message regarding the status of Mr. Bonnstetter's Employment Agreement. Derin told Mr. Bonnstetter that he "provided all details we discussed for the severance and potential exit bonus to our legal prior to me leaving for the McLeod Event. They have everything in front of them to put together a document. It is going to take time for the S2Q ownership group to finalize this, but you have my word, you will have a document to execute before the end of your first 90 days. Very excited about the future." See Ex. C.

25.     Ninety days had elapsed since Mr. Bonnstetter began his employment and Derin had not delivered him the Employment Agreement as promised.

26.     In or around late December 2023, over ninety days after Mr. Bonnstetter began working for S2Q, he inquired about the status of his Employment Agreement.

27.     Derin informed Mr. Bonnstetter that S2Q's lawyer was still working on the contract, and asked whether Mr. Bonnstetter would be willing to contribute a percentage of his ownership back to the Company.

28.     Mr. Bonnstetter and Derin agreed that if the S2Q got an investor and other owners gave up half of their ownership, Mr. Bonnstetter would contribute 2% of his ownership back to the Company. If the other owners gave up 1/3 of their ownership, Mr. Bonnstetter would contribute 1% of his ownership back to the Company. ("Modified Employment Agreement").

29.     After Mr. Bonnstetter and Derin agreed to these additional terms, Derin informed Mr. Bonnstetter that he would be receiving his Modified Employment Agreement soon.

30.     Derin did not deliver Mr. Bonnstetter the Modified Employment Agreement. Rather, Mr. Bonnstetter repeatedly inquired about it over the next several months, and each time Derin assured him that it was being "finalized."

31.     In or around April 2024, Mr. Bonnstetter completed his work on the RFP product he was hired to build.

32.     The day after Mr. Bonnstetter completed the product, Defendants terminated him, without cause.

33.     Defendants never delivered Mr. Bonnstetter the Employment Agreement or the Modified Employment Agreement in writing containing the terms that the two orally agreed to.

34.     Defendants did not pay Mr. Bonnstetter an exit bonus or two months of severance in accordance with the Employment Agreement or the Modified Employment Agreement.

35.     Defendants also did not give Mr. Bonnstetter the ownership in the Company he was promised in accordance with the Employment Agreement and the Modified Employment Agreement.

36.     Mr. Bonnstetter was also not compensated in accordance with his commission contract for three sales that he made, which totaled around $11,262.00 in earnings for S2Q, or reimburse him for his expenses, totaling $1,383.92.

37.     Defendants did not pay Mr. Bonnstetter two weeks of severance that were contained in the Interim Agreement.

## COUNT I – IWPCA
### (Unpaid Severance and Commissions) (against all Defendants)

38.     Plaintiff re-pleads the allegations contained above and incorporates them by reference as if fully stated herein.

39.     Defendants are "employers" and Plaintiff was an "employee" within the meaning of the IWPCA. 820 ILCS 115/2.

40.     Under the IWPCA, an 'agreement' "means the manifestation of mutual assent on the part of two or more persons. An agreement is broader than a contract and an exchange of promises or any exchange is not required for an agreement to be in effect. An agreement may be reached by the parties without the formalities and accompanying legal protections of a contract and may be manifested by words or by any other conduct, such as past practice." 56 Ill. Admin. 300.450.

41.     Plaintiff and Defendants' Employment Agreement and the "Modified Employment Agreement" each constituted an "agreement" within the meaning of the IWPCA. *Id.*

6

42.     Defendants failed to pay Plaintiff all earned wages and compensation due, including his agreed-upon two-months' severance and commissions in violation of 820 ILCS 115/4 and 115/5.

43.     Defendant Derin is individually liable under 820 ILCS 115/13 for knowingly permitting violations of the IWPCA.

44.     As a direct result of Defendants' conduct, Plaintiff has suffered monetary damages and is entitled to his unpaid two-months' severance and unpaid commissions.

45.     Pursuant to §115/14 of the IWPCA, Plaintiff is entitled to recover unpaid wages, and damages in the amount of five percent (5%) per month of the amount of under payments for each month following the date of payment which such underpayments remain unpaid.

WHEREFORE, Plaintiff, Matthew Bonnstetter, respectfully requests that this Court enter judgment in his favor and against Defendants and award him:

a)  All unpaid wages owed to Plaintiff pursuant to the IWPCA;

b)  Interest pursuant to the IWPCA;

c)  Reasonable attorneys' fees and costs incurred in connection with the instant action pursuant to the IWPCA; and

d)  Any such further and additional relief, including equitable damages, as the Court may deem just and proper.

**COUNT II – IWPCA**
**(Unpaid Equity) (against all Defendants)**

46.     Plaintiff re-pleads the allegations contained above and incorporates them by reference as if fully stated herein.

47.     Plaintiff and Defendants' "Employment Agreement" and "Modified Employment Agreement" provided Plaintiff with 3% equity in the Company. 3% of the Company's total

distributed profits were to be paid out to Plaintiff annually if he left the Company for any reason other than by his own choice.

48.     Pursuant to the "Modified Employment Agreement," if the Company got an investor and other owners gave up half of their ownership, Plaintiff would then contribute 2% of his ownership back to the Company. If the other owners gave up 1/3 of their ownership, Plaintiff would then contribute 1% of his ownership back to the Company, and would still be entitled to the remaining 1% or 2% of total distributed payments annually.

49.     At the time Defendants terminated Plaintiff, the Company had no investors. Plaintiff is entitled to an annual payout of 3% of the Company's distributed profits.

50.     Defendant Derin is individually liable under 820 ILCS 115/13 for knowingly permitting violations of the IWPCA.

51.     As a direct result of Defendants' conduct, Plaintiff has suffered monetary damages and is entitled to his annual payout of 3% equity of the Company's distributed profits.

52.     Pursuant to §115/14 of the IWPCA, Plaintiff is entitled to recover unpaid wages, and damages in the amount of five percent (5%) per month of the amount of under payments for each month following the date of payment which such underpayments remain unpaid.

WHEREFORE, Plaintiff, Matthew Bonnstetter, respectfully requests that this Court enter judgment in his favor and against Defendants and award him:

a) All unpaid wages owed to Plaintiff pursuant to the IWPCA;

b) Interest pursuant to the IWPCA;

c) Reasonable attorneys' fees and costs incurred in connection with the instant action pursuant to the IWPCA; and

d) Any such further and additional relief, including equitable damages, as the Court may deem just and proper.

## COUNT III – FRAUDULENT MISREPRESENTATION
### (against all Defendants)

53.     Plaintiff re-pleads the allegations contained in Paragraphs 1 through 37, and incorporates them by reference as if fully stated herein.

54.     Defendants engaged in a scheme to defraud Plaintiff when they agreed to the terms of the Employment Agreement.

55.     Defendants engaged in a scheme to defraud Plaintiff when he induced him into signing the Interim Agreement under the premise that he would receive the Employment Agreement within ninety days of his employment with the Company.

56.     Defendants knew that they did not intend to abide by the terms of the Employment Agreement.

57.     Defendants knew that the promise to deliver Plaintiff the Employment Agreement memorializing their agreed-upon terms within ninety days of his employment was false.

58.     Defendants intended for Plaintiff to rely on these false statements.

59.     Plaintiff reasonably and actually relied upon Defendants' false statements.

60.     Had Plaintiff known that Defendants' promises to provide him with an Employment Contract within ninety days of his employment and to abide by the agreed-upon terms of the Employment Agreement was false and fraudulent, he would have never entered into the Interim Agreement with Defendants, never would have accepted employment with Defendants, and would not have declined his other pending job offer to accept employment with Defendants.

61.     Plaintiff has suffered injury as a result of relying on Defendants' knowingly false and fraudulent misrepresentations and Plaintiff's reliance thereupon.

9

WHEREFORE, Plaintiff, Matthew Bonnstetter, respectfully requests that this Court enter judgment in his favor and against Defendants and enter an order:

a)   Rescinding the Interim Agreement;

b)   Awarding Plaintiff his actual damages in an amount to be proved at trial;

c)   Awarding Plaintiff punitive damages for Defendants' egregious fraudulent conduct;

d)   Awarding Plaintiff pre-judgment interest;

e)   Awarding reasonable attorneys' fees and costs incurred by Plaintiff in connection with the instant action; and

f)   Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

## COUNT IV – PROMISSORY ESTOPPEL
### (against all Defendants)

62.     Plaintiff re-pleads the allegations contained in Paragraphs 1 through 37 and incorporates them by reference as if fully stated herein.

63.     Defendants made unambiguous promises to Plaintiff that he would be compensated at agreed-upon terms, would be granted 3% equity in S2Q, and that the Interim Contract would be replaced by the Employment Agreement within ninety days of his employment with the Company.

64.     Plaintiff reasonably and foreseeably relied on these promises to his detriment by leaving his previous employment, creating and providing his highly lucrative intellectual property to S2Q, performing work, and declining other opportunities.

65.     Plaintiff has suffered harm as a direct result of his reliance.

WHEREFORE, Plaintiff, Matthew Bonnstetter, respectfully requests that this Court enter judgment in his favor and against Defendants and enter an order:

a)  Awarding Plaintiff the reasonable value of the severance, commission, and pay distributions promised and relied upon;

b)  Awarding Plaintiff any other damages arising from Plaintiff's detrimental reliance on Defendant's false promise;

c)  Awarding pre-judgment interest; and

d)  Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

**COUNT V – UNJUST ENRICHMENT**
**(against all Defendants)**

66.     Plaintiff re-pleads the allegations contained in Paragraphs 1 through 37 and incorporates them by reference as if fully stated herein.

67.     Plaintiff conferred a benefit on Defendants by providing labor, services, and the final product.

68.     Defendants knowingly accepted and retained the benefit without compensating Plaintiff in accordance with the Employment Agreement or Modified Employment Agreement.

69.     It would be unjust for Defendants to retain the benefit of Plaintiff's work without providing him with fair value as reflected in the parties' agreed-upon compensation.

WHEREFORE, Plaintiff, Matthew Bonnstetter, respectfully requests that this Court enter judgment in his favor and against Defendants and enter an order:

a)  Awarding Plaintiff restitution in an amount to be proven at trial;

b)  Awarding pre-judgment interest; and

c)  Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

**COUNT VI – BREACH OF CONTRACT (in the alternative to Counts III-V)**
**(against Defendant S2Q Systems)**

70)     Plaintiff re-pleads the allegations contained a in Paragraphs 1 through 37 and incorporates them by reference as if fully stated herein.

71)     Plaintiff brings this claim in the alternative to Counts III-V.

72)     Defendants' failure to pay Plaintiff two-months' severance, his commission earnings, and annual 3% distributed profits breached the Modified Employment Agreement.

73)     The Modified Employment Agreement constituted a valid and enforceable contract.

74)     As a direct and proximate cause of Defendants' actual failure to pay Plaintiff all sums due, Plaintiff has been damaged.

WHEREFORE, Plaintiff, Matthew Bonnstetter, respectfully requests that this Court enter judgment in his favor and against Defendants and enter an order:

a)  Finding that Defendants breached their obligation to pay Plaintiff in accordance with the Modified Employment Agreement;

b)  Awarding Plaintiff an amount equal to his unpaid severance, commissions, and pay distributions;

c)  Awarding Plaintiff pre-judgment interest;

d)  Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Dated: July 2, 2025                              Respectfully submitted,

Alejandro Caffarelli, #6239078           MATTHEW BONNSTETTER
Whitney Barr, #6340077
Caffarelli & Associates Ltd.
8 S. Michigan Ave., Suite 1200           By: /s/ *Alejandro Caffarelli*
Chicago, Illinois 60603                            Attorney for Plaintiff
Tel. (312) 763-6880
*acaffarelli@caffarelli.com*
*wbarr@caffarelli.com*

12